**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**STEVE ANEVSKI**, individually and on behalf of all other similarly situated individuals and entities,

**Plaintiff**,

v.

**THE HUNTINGTON NATIONAL BANK, N.A.,**
Serve: CT Corporation System
4400 Easton Commons Way
Suite 125
Columbus, Ohio 43219,

**PNC BANK, N.A.,**
Serve: Corporation Service Company
50 West Broad Street
Suite 1330
Columbus, Ohio 43215,

**CIVISTA BANK,**
Serve: Dennis G. Shaffer
100 E. Water Street
Sandusky, Ohio 44870,

**Defendants**.

**Case No. 2:20-cv-3646**

**JUDGE Edmund A. Sargus**

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**

**JURY DEMAND ENDORSED HEREON**

For his Complaint against the Defendants The Huntington National Bank, N.A. ("Huntington"), PNC Bank, N.A. ("PNC"), and Civista Bank ("Civista")(collectively "Defendants"), Plaintiff Steve Anevski ("Plaintiff" hereinafter) alleges based upon personal knowledge, investigation of his counsel, and information and belief as follows:

## I. OVERVIEW

1. Plaintiff brings this class action Complaint on behalf of himself and similarly situated individuals and entities against Defendants, to obtain Agent Fees owed to Plaintiff and members of the Class defined below ("Class Members"), as a result of work performed as Agents who assist small business borrowers (the "Applicants") in obtaining federally guaranteed loans through the Paycheck Protection Program ("PPP").[1] The PPP is a federal program implemented March 25, 2020, to provide small businesses with federally guaranteed loans to assist with payroll expenses to and thereby help combat the economic impact of COVID-19. The legislation implementing the PPP program is contained in sections 1102 and 1106 of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act").

2. The PPP is a program under the Small Business Administration's ("SBA") 7(a) Loan Program. The PPP permits the SBA to guarantee 100 percent of 7(a) loans and provides forgiveness of up to the full principal amount of any qualifying loan. Small business owners apply for a PPP loan through existing SBA-approved Lenders ("Lenders") or through any federally insured deposit institution. On April 24, 2020, the federal government added $310 billion to the PPP through the Paycheck Protection Program and Health Care Enhancement Act.

3. The CARES Act provides that the Administrator of the SBA "shall reimburse a lender" for processing the loans. 15 U.S.C. § 636(a)(36)(P)(i). This reimbursement shall be made not later than five days after the disbursement of the PPP loan. *Id*. at § 636(a)(36)(P)(iii). Lenders are to be reimbursed five percent (5%) for loans of not more than $350,000; three percent (3%) for loans of more than $350,000 and less than $2 million; and one percent (1%) for loans of at least $2 million. *Id*. at § 636(a)(36)(P)(i).

---

[1] Terms capitalized herein and in the statutes or regulations referenced herein, such as "Agent" and "Agent Fees," are meant to have the same meaning herein as in the relevant statutes or regulations.

4. To encourage the obtainment of PPP loans by small businesses, the CARES Act and federal regulations promulgated thereunder also require the payment of a fee to Agents ("Agent Fees") who assist eligible borrowers in preparing their PPP loan application ("Agents") in an amount not in excess of limits established by the Administrator of the SBA. *Id*. at § 636(a)(36)(P)(ii). On April 15, 2020, the Administrator issued the Interim Final Rule (the "Rule") regarding PPP loans. Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811 (Apr. 15, 2020) (to be codified at 13 C.F.R. pt. 120). The Rule provides that Agent Fees "will be paid by the Lender out of the fees the Lender receives from SBA." *Id*. at 20,816. The Rule also specifically provides that Agents "may not collect fees from the borrower or be paid out of the PPP loan proceeds." *Id*. Thus, per the combined effect of the CARES Act and the Rule, Agents who assist applicants in preparing their PPP loan, such as the Plaintiff and Class Members, must be paid, Agent Fees by the Lender, such as the Defendants, out of the fees that the Lender itself receives for processing the PPP loans. Under the Rule, the total amount that an Agent shall receive from the Lender "for assistance in preparing an application for a PPP loan" is up to one percent (1%) for loans of not more than $350,000; a half of a percent (.5%) for loans of more than $350,000 and less than $2 million; and a quarter of a percent (.25%) for loans of at least $2 million. *Id*.

5. Although the Defendants are required to pay Plaintiff and Class Members for their work as Agents who facilitated loans between Defendants and small businesses, Defendants continue to refuse to pay the fees that are due the Plaintiff and Class Members. The language of the PPP legislation and corresponding regulations are clear that Lenders must pay Agent Fees and it is no mistake. Congress intended that the Defendants and other Lenders pay Plaintiff and Class Members Agent Fees for facilitating PPP loans. If congress did not intend to require the payment of Agent Fees by Lenders, they could have made it clear that they did not intend for

Lenders to pay Agent Fees when they added $310 billion to the PPP through the Paycheck Protection Program and Health Care Enhancement Act. However, congress did not remove the requirement that Lenders such as the Defendants pay Agent Fees to Plaintiff and Class Members. Instead, congress affirmed the requirement that Lenders must pay Agent Fees to the Plaintiff and Class Members by placing it in and keeping it in the CARES Act and regulations decreed thereunder.

6. Despite the requirements in the CARES Act and regulations promulgated thereunder, specifically stating that Agent Fees are owed to Plaintiff and Class Members, Defendants have failed to pay Plaintiff and Class Members the mandatory Agent Fees required by the CARES Act and federal regulations. Instead, Defendants have refused to pay and kept the Agent Fees that the SBA gives the Defendants to pay the Plaintiff and Class Members. Defendant Huntington made it clear to the Plaintiff that it is not paying Agent Fees to the Plaintiff or anyone. *See,* Exhibit 1. Defendant Civista also made it clear they are not paying Agent Fees to the Plaintiff or anyone. *See,* Exhibit 2. And, Defendant PNC has obstinately declared that it will not pay Agent Fees to anyone.[2] *See,* Exhibit 3.

7. Defendants' refusal to pay Agent Fees to the Plaintiff and Class Members demonstrates a blatant disregard for the law. Plaintiff brings this class action to force the Defendants to abide by the law and stop violating the CARES Act and regulations promulgated thereunder.

[2] *See*, https://www.pnc.com/en/customer-service/paycheck-protection-program.html ("PNC will not pay Agents for assistance they may provide an applicant in obtaining a PPP loan.").

## II. PARTIES

8. Plaintiff Steve Aneveski ("Plaintiff") is a sole proprietor doing business in the State of Ohio since 2013. Plaintiff is a licensed attorney in good standing since February 2013. Plaintiff resides in Cincinnati, Ohio. Although Plaintiff assisted its clients with preparing their applications for PPP loans from the Defendants, Defendants have refused to pay Plaintiff the Agent Fees Defendants owe Plaintiff for Plaintiff's work in securing the PPP loans for his clients.

9. Defendant The Huntington National Bank, N.A. ("Huntington") is a regional bank with its headquarters at 17 South High Street in Columbus, Ohio. Huntington is the second largest originator of SBA loans. Plaintiff acted in the statutorily defined role of an Agent in securing PPP loans for three borrowers from Huntington in an amount of approximately $1,622,103.00. Although each borrower's PPP loan was funded, Huntington refuses to pay Plaintiff and Class Members the statutorily required Agent Fees that Huntington received from the Federal Government.

10. Defendant PNC Bank, N.A. ("PNC") is a regional bank with its headquarters at 300 Fifth Avenue, in Pittsburgh, Pennsylvania. PNC is one of the largest originators of SBA loans. PNC does a substantial amount of business and derives substantial revenues from business operations within the district of this Court. Plaintiff acted in the statutorily defined role of an Agent in securing PPP loans for two borrowers from PNC in an amount of approximately $130,579.00. Although each borrower's PPP loan was funded, PNC refuses to pay Plaintiff and Class Members the statutorily required Agent Fees that PNC received from the Federal Government.

11. Defendant Civista Bank ("Civista") is an Ohio bank with its headquarters at 100 East Water Street, in Sandusky, Ohio. Civista is an emerging originator of SBA loans. Civista does a substantial amount of business and derives substantial revenues from business operations

within the district of this Court. Plaintiff acted in the statutorily defined role of an Agent in securing PPP loans for one borrower from Civista in an amount of approximately $47,500.00. Although the borrower's PPP loan was funded, Civista refuses to pay Plaintiff and Class Members the statutorily required Agent Fees that Civista received from the Federal Government.

## III. JURISDICTION AND VENUE

12. The Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. §1332(d), because this is a class action in which (1) at least some members of the proposed Class have different citizenship from Defendant(s); (2) the proposed class consists of more than 100 persons or entities; and (3) the claims of the proposed members of the Class exceed $5,000,000 in the aggregate.

13. This Court also has original jurisdiction over this action under 28 U.S.C. §1331 because the action arises under the laws of the United States, including the Coronavirus Aid, Relief, and Economic Security Act, the CARES Act (P.L. 116-136), and the SBA Regulations (as defined below).

14. This Court has personal jurisdiction over Defendants because Defendants do business in this District, and a substantial number of the events giving rise to the claims alleged herein took place in this District.

15. The venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because at least one of the Defendant's principal place of business is located in this District, Defendants do substantial business and derive substantial revenues from business in this District, and a substantial part of the events or omissions giving rise to the alleged claims occurred in this District.

## IV. FACTUAL ALLEGATIONS

### A. Context

16. On January 21, 2020, the Center for Disease Control and Prevention ("CDC") confirmed the first U.S. case of a new coronavirus. On February 8, 2020, the International Committee on Taxonomy of Viruses announced that the name of the new coronavirus would be "severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2)." The name reflects the fact that the new coronavirus was genetically related to the coronavirus responsible for the SARS outbreak of 2003. The name of the disease that is caused by the novel coronavirus, SARS-CoV-2, is COVID-19. The disease COVID-19 is deadly and spreads from person to person easier and faster than most viruses.

17. On January 30, 2020, the World Health Organization ("WHO") declared the COVID-19 outbreak to be a "public health emergency of international concern." On March 11, 2020, the WHO declared that the spread of COVID-19 had become a pandemic.

18. On March 23, 2020, Ohio joined the first wave of states to issue "stay at home orders" that prevented unnecessary travel with the goal of preventing the spread of COVID-19. States such as Ohio worried that hospitals may be overwhelmed if nothing was done to slow the spread of COVID-19. Governor DeWine was among the more aggressive governors in combatting COVID-19.

19. On March 13, 2020, President Trump issued the Coronavirus Disease 2019 (COVID-19) Emergency Declaration applicable to the United States, which declared that the pandemic was of "sufficient severity and magnitude to warrant an emergency declaration for all states, territories and the District of Columbia." The Trump Administration expressly recognized that with the COVID-19 emergency, "many small businesses nationwide are experiencing economic hardship as a direct result of the Federal, State, and local public health measures that

are being taken to minimize the public's exposure to the virus." *See Business Loan Program Temporary Changes; Paycheck Protection Program*, 13 CFR Part 120, Interim Final Rule (the "SBA PPP Final Rule").

20. On March 25, 2020, in response to the economic damage caused by the COVID-19 crisis, the United States Senate passed the Coronavirus Aid, Relief, and Economic Security Act, the CARES Act (P.L. 116-136). The CARES Act was passed by the House of Representatives the following day and signed into law by President Trump on March 27, 2020. This legislation included $377 billion in federally funded loans to small businesses and a $500 billion governmental lending program, administered by the United States Department of Treasury ("Treasury") and the Small Business Administration ("SBA"), a United States government agency that provides support to entrepreneurs and small businesses.

21. As part of the CARES Act, the Federal Government created a $349 billion loan program, referred to as the Paycheck Protection Program or PPP, temporarily adding a new product to the SBA's 7(a) Loan Program ("SBA 7(a) Program"). The PPP provided small businesses with loans to be originated from February 15, 2020, through June 30, 2020. The PPP was created to provide American small businesses with eight-weeks[3] of cash-flow assistance and to allow a certain percentage of the loan to be forgiven if the loan is utilized to retain employees and fund payrolls. Although the loans are administered by the Treasury and backed by the Federal Government, the loans are funded by private lenders ("Lenders"), including banks and financial services firms, that review and approve PPP loan applications.

22. The Treasury announced on April 3, 2020, that small businesses and sole proprietors could fill out an application (the "Application") to apply and receive loans to cover

[3] On June 5, 2020, the Paycheck Protection Program Flexibility Act of 2020 (Pub. L. 116-142), extended the eight-week period to twenty-four weeks.

their payroll and other expenses through approved SBA Lenders. Beginning on April 10, 2020, independent contractors and self-employed individuals could apply as well.[4]

23. On April 24, 2020, President Trump signed the Paycheck Protection Program and Health Care Enhancement Act ("PPPEA"). The PPPEA added $310 billion in PPP funding, bringing the total PPP funds available to lend to $659 billion.

24. On June 5, 2020, President Trump signed the Paycheck Protection Program Flexibility Act of 2020 ("Flexibility Act") (Pub. L. 116-142), which changes key provisions of the Paycheck Protection Program, including provisions relating to the maturity of PPP loans, the deferral of PPP loan payments, and the forgiveness of PPP loans. **The Flexibility Act did not change Defendants' statutory duty to pay Plaintiff and Class Members the Agent Fees they are owed**.

25. The Treasury's Paycheck Protect Program (PPP) Information Sheet for Lenders[5] (the "PPP ISL"), consistent with the SBA PPP Final Rule (collectively, the "SBA Regulations"), describes a system to distribute the PPP loans that relies on established SBA Lenders – who approve and fund loan applicants – and the **addition** of independent Agents ("PPP Agents") – who provide small businesses with the necessary assistance enabling them to apply for a PPP loan.

26. Under 13 C.F.R. 103.1(a), an Agent "means an authorized representative including an attorney, accountant, consultant, packager, Lender service provider, or any other individual or entity representing an Applicant or Participant by conducting business with SBA."

---

[4] *Paycheck Protection Program (PPP) Information Sheet: Borrowers*, Dep't of Treasury (last visited, June 18, 2020), *https://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf*

[5] *Paycheck Protection Program (PPP) Information Sheet: Lenders*, Dep't of Treasury (last visited, June 18, 2020), https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf?

Conducting Business with the SBA includes preparation and submission of an application for financial assistance of any kind on behalf of an applicant. *Id*. at 103.1(b).

27. The U.S. Department of the Treasury further refined the definition of "Agent" to Lenders through its "Paycheck Protection Program (PPP) Information Sheet—Lenders," ("Information Sheet"). With regard to Agents, the Treasury Department's Information Sheet stated the following: "An Agent is an authorized representative and can be:

- An attorney;
- An accountant;
- A consultant;
- Someone who prepares and applicant's application for financial assistance and is employed and compensated by the applicant;
- Someone who assists a lender with originating, disbursing, servicing, liquidating, or litigating SBA loans;
- A loan broker; or
- Any other individual or entity representing an applicant by conducting business with the SBA."

The Treasury Department's Information Sheet also made clear to Lenders such as the Defendants that "Agent fees will be paid out of Lender Fees. The Lender will pay the Agent."

28. Unlike the existing SBA 7(a) Program, the SBA Regulations expressly contemplate and encourage PPP Agents to assist small businesses with their Applications. The SBA Regulations allow for and set standards by which PPP Agents are to be paid for their work. **Specifically, the regulations require that PPP Agents be paid from a portion of the set fees provided to SBA Lenders for processing PPP Loans.**

29. Before the passage of the CARES Act, **Lenders were not compensated** by the SBA for originating SBA 7(a) Loans. Under the newly enacted SBA Regulations for PPP loans, Lenders are **generously compensated** for processing PPP loans ("Lender Fees") based on the

amount of the funded PPP loan. The SBA pays Lender Fees to Lenders who process PPP loans in the following amounts:

- Five percent (5%) for loans of not more than $350,000;
- Three percent (3%) for loans of more than $350,000 and less than $2,000,000; and
- One percent (1%) for loans of at least $2,000,000.[6]

30. The CARES Act states, "**Agent fees will be paid by the lender out of the fees the lender receives from SBA**. Agents may not collect fees from the **borrower or be paid out of the PPP loan proceeds**. The total amount that an Agent may collect from the lender for assistance in preparing an application for a PPP loan … may not exceed:

- One (1) percent for loans of not more than $350,000;
- 0.50 percent for loans of more than $350,000 and less than $2 million; and
- 0.25 percent for loans of at least $2 million."[7] (the "Agent Fees").

31. Before the passage of the CARES Act, Agents were **not** compensated by the SBA for originating SBA 7(a) Loans. That is why the CARES Act authorized the Treasury to establish limits on Agent Fees. The Treasury, "in consultation with the Secretary, **determined that the Agent fee limits set forth above are reasonable based upon the application requirements and the fees that lenders receive for making PPP loans**."[8]

32. In other words, when implementing the CARES Act, the Treasury determined that the best and quickest way to get the PPP loans to the small businesses was to establish **new** regulations where Lenders and PPP Agents work together to quickly and efficiently process Applications. To incentivize this relationship, the Lender and Agent were to split the Federal

---

[6] *85 FR 20816 (3)(d).*
[7] *85 FR 20816 (4)(c).*
[8] *Id. (Emphasis Added).*

Government fees approximately 80% to be retained by the Lender and 20% to be forwarded to the Agent.

33. By assisting businesses in preparing their Applications for PPP funding, PPP Agents play a critical role in fulfilling the goals of the CARES Act and ensuring adherence to the United States Congress's legislative intent. Indeed, the Senate directed the Treasury to "**issue guidance to lenders and Agents to ensure that the processing and disbursement of covered loans** ***prioritizes small business concerns and entities in underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially and economically disadvantaged individuals…, women, and businesses in operation for less than 2 years***."[9] If not for the PPP Agents, tens of thousands of small businesses would have had difficulty or been unable to apply for PPP loans.

34. **Nowhere in the CARES Act or the SBA Regulations does the Federal Government state, or even suggest, that Lender's approval is required in order for an Applicant to use an Agent. Nor does the CARES Act give the Lender any role in choosing the Agent for the borrower or accepting the Agent chosen by the borrower.**

35. In the present case, the Defendants are SBA approved Lenders. Plaintiff served as the PPP Agent for small businesses applying for the PPP loans provided by the Defendants and backed by the full faith and credit of the Federal Government. Despite Plaintiff's important (and successful) work in assisting the Applicants with their Applications, Defendants have not paid Plaintiff the required Agent Fees. Instead, Defendants have retained the full amount of the Agent Fee portion of the Lender Fees.

36. Plaintiff has no other means of obtaining payment for the PPP Agent services it provided to its clients in securing their PPP loans. The SBA Regulations specifically prohibit

[9] *CARES ACT, PL 116-136, March 27, 2020, 134 Stat 281. (Emphasis Added.)*

PPP Agents from obtaining payment of any fees from the Applicants (*i.e.,* Plaintiff's clients). The SBA Regulations require Plaintiff to be paid ***only*** by the Lender (*i.e.,* Defendants) through the payment of a portion of the Lender Fees.

37. Apart from Plaintiff's clients, Defendants funded PPP loans for other businesses and failed to pay the statutorily required Agent Fees to Members of the proposed Class that served as PPP Agents for other Applicants whose PPP loans were also funded by the Defendants.

38. Adding validity to the need to file this action, on May 27, 2020, United Community Banks, Inc. ("UCB"), received a civil investigative demand ("CID") from the U.S. Department of Justice (the "DOJ") pursuant to the False Claims Act. The CID directed UCB and its affiliated entities "to produce certain documents and respond to written interrogatories relating to the PPP loans approved by the Bank, the **Bank's non-payment of fees to Agents of borrowers** and the Bank's policies related to payment or non-payment of Agent Fees."[10]

39. There is no basis in the CARES Act or corresponding regulations for Defendants to withhold the Agent Fees due to the Plaintiff. Instead, the CARES Act and corresponding regulations make it clear that Defendants owe Plaintiff the Agent Fees for helping his clients obtain PPP loans from the Defendants. Defendants are biting the hand that feeds them by refusing to pay the required Agent Fees to the person who brought them the borrower of a loan for which they are paid substantial fees themselves.

### B. Plaintiff Assisted Clients with Applying for PPP Loans Under the CARES Act

40. To assist clients with preparing Applications for a PPP loan through Defendants, Plaintiff spent considerable time familiarizing himself with the CARES Act and the related SBA

---

[10] *United Community Banks, Inc., Form 8-K* (last visited June 18, 2020), https://ir.ucbi.com/static-files/c7f8eaa8-d6bf-48e8-8ebc-a60c0bf3adea. UCB is a named defendant in another lawsuit based on the same allegations in the Northern District of Georgia, 1:20-cv-02026-LMM.

Regulations. In particular, relevant provisions include Section 1102, which permits the SBA to guarantee 100% of Section 7(a) loans under the PPP, and Section 1106 of the Act, which provides forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

41. In accordance with the SBA Regulations, Plaintiff assisted Applicants in the PPP Application process. As contemplated by the Federal Government, such assistance contributed to the successful funding of the Applicants' PPP loans with Defendants.

42. Based on the SBA Regulations, Plaintiff understood that he was not allowed to charge his clients any fee relating to the Application process and that he was only permitted to receive compensation from the PPP Agents' share of the Lender Fees that the Federal Government entrusted to the Lenders for the benefit of the PPP Loan Agents.

43. Plaintiff further understood that he was not entitled to the Agent Fees until the Lender received its Lender Fees. However, Defendants received the Fees for the Applicants Plaintiff assisted, thereby making the Agent Fees immediately due to Plaintiff. Despite receiving the Agent Fees, Defendants still refuse to pay the Agent Fees to the Plaintiff and Class Members.

44. To participate in the PPP, "Lenders **must** comply with the applicable lender obligations set forth in this [SBA PPP Final Rule]…"[11]. Plaintiff believed in good faith that Defendants would comply with the SBA Regulations and pay Plaintiff the statutorily required Agent Fees.

45. However, Defendants violated the SBA Final Rule because they did not pay Plaintiff the Agent Fees that the Federal Government entrusted to the Defendants for the benefit of the Plaintiff and Class Members. Instead, Defendants have illegally retained the Agent Fees. A request for payment of the Agent Fees was made to Defendant Huntington and Defendant

[11] *85 FR 20812 (1). (Emphasis Added).*

Civista. Defendant Huntington and Defendant Civista both refused to pay the Agent Fees. *See,* Exhibits 1 and 2.

46. Plaintiff did not submit a request for Agent Fees to Defendant PNC as PNC has boldly declared that "PNC will not pay any fees to an Agent or third party for any assistance they provided in preparing this application." *See,* Exhibit 3. Accordingly, a demand for payment of Agent Fees to Defendant PNC is futile.

47. Defendants, as Lenders under the PPP, lack any legal authority under the SBA Regulations to withhold payment of the Agent Fees to Plaintiff and Class Members.

48. As a result of Defendants' unlawful actions, Plaintiff and Class Members have suffered financial harm by being deprived of the statutorily mandated compensation for the professional services they provided in their critical role as a PPP Agent, assisting Applicants in the preparation of their PPP Loan application. Defendants barred Plaintiff from receiving compensation for his role as a PPP Agent in the PPP Loan process, which role resulted in significant benefits to both small businesses and the Lenders such as the Defendants.

## V. CLASS ALLEGATIONS

49. Plaintiff brings this action on behalf of himself, and all other similarly situated individuals pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Nationwide Class:

> **All Agents who assisted a business in preparing an Application for a PPP loan pursuant to the CARES Act (the "Nationwide Class").**

50. To the extent that a Nationwide Class is not certified, in the alternative, Plaintiff brings this action on behalf of himself, and all other similarly situated individuals pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Statewide Class:

> **All Agents who assisted a business in Ohio in preparing an Application for a PPP loan pursuant to the CARES Act (the "Statewide Class").**

The Statewide and Nationwide Class may hereafter be referred to as the "Class" and all persons and entities who are a part of the Class may be referred to herein as "Class Members."

51. For purposes of the Class definition, the term "Agent" has the same meaning as an "Agent" under the SBA Regulations.

52. Plaintiff reserves the right to expand, limit, modify, or amend the foregoing Class definitions, including the addition of one or more subclasses, in connection with Plaintiff's motion for class certification, or any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

53. The following are excluded from the Class and/or Subclass: (a) any Judge or Magistrate presiding over this action and members of their families; (b) the officers, directors, or employees of Defendants; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

54. *Numerosity:* The Class is composed of hundreds or thousands of Agents (the

"Class Members"), whose joinder in this action would be impracticable. The number of loans demonstrates that numerosity is satisfied in this case. The disposition of their claims through this class action will benefit all Class Members, the parties, and the courts.

55. *Commonality and Predominance:* Common questions of law and fact affect the Class. These questions of law and fact predominate over individual questions affecting individual Class Members and, include, but are not limited to, the following:

a. Whether Plaintiff is an "Agent" as that term is defined by the Cares Act and relevant regulations;

b. Whether Defendants were obligated to pay Plaintiff and the Class Agent Fees from the Lender Fees it received under the CARES Act;

c. Whether Defendants failed to pay Agent Fees they were required to pay;

d. Whether Class Members are entitled to damages; and if so, in what amount;

e. Whether Defendants are likely to continue to mislead the public and Class Members and continue to violate SBA Regulations regarding paying Agents their earned fees under the CARES Act;

f. Whether Plaintiff and Class Members are entitled to an award of reasonable attorney's fees, pre-judgment interest and costs of suit; and

g. Whether Defendants were unjustly enriched by their practice of refusing to pay Agent Fees.

56. *Superiority*: In engaging in the conduct described herein, Defendants have acted and/or failed to act on grounds generally applicable to Plaintiff and Class Members. Such behavior requires the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class Members. A class action is superior to all other available means for the fair and efficient adjudication of Plaintiff's and the Class Members' claims. Few, if any, Class Members could afford or would deem it economically reasonable to seek legal redress for the wrongs complained of herein on an individual basis. Absent a class action, Class Members would not likely recover, or have the chance to recover, and Defendants would be permitted to retain the fruits of their misdeeds. Any difficulties that might occur in the management of this proposed

class action are insubstantial and can be easily managed with typical class action management techniques. See Fed. R. Civ. P. 23(b)(1)(A).

57. *Typicality*: Plaintiff's claims are typical of, and are not antagonistic to, the claims of other Class Members. Plaintiff and Class Members have been injured by Defendants' uniform, unfair and unlawful practice of denying PPP Agent Fees, as alleged herein. The factual and legal basis of Defendants' liability to Plaintiff and each Class Member as a result of Defendants' actions described herein is uniform for Plaintiff and Class Members.

58. *Adequacy*: Plaintiff is an adequate representative of the Class because he is a Member of the Class, and Plaintiff's interests do not conflict with the interests of other Class Members that Plaintiff seeks to represent. Plaintiff will fairly and adequately represent and protect the interests of other Class Members. Plaintiff has retained counsel with substantial experience in litigating complex cases, including class actions. Both Plaintiff and his counsel will vigorously prosecute this action on behalf of the Class and have the financial ability to do so. Neither Plaintiff nor his counsel has any interest adverse to other Class Members.

59. Class Members can be easily identified using Defendant's extensive records of loan applications and other records associated with the loan process. These records are required pursuant to Federally-mandated record-keeping practices. Defendants have one or more databases through which all of the Applicants may be identified and ascertained, and Defendants maintain contact information, including email and mailing addresses that may be used to notify Class Members of this action. From this information, the existence of the Class Members (i.e., the PPP Agent for the Applicant) can be determined, and thereafter, a notice of this action can be disseminated in accordance with due process requirements.

## VI. CAUSES OF ACTION

### A. COUNT I: DECLARATORY RELIEF AGAINST ALL DEFENDANTS

60. Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

61. Plaintiff assisted his clients with the PPP Loan application process, allowed Defendants to secure customers for PPP lending, and satisfied all prerequisites for obtaining PPP Agent Fees. Defendants failed to pay Agent Fees owed to Plaintiff as required by the SBA Regulations. Instead, Defendants kept the Agent Fees for themselves, in direct violation of the SBA Regulations.

62. An actual controversy has arisen between Plaintiff and Defendants as to the Agent Fees owed to Plaintiff by Defendants. Through their conduct of refusing to pay Agent Fees and otherwise, Defendants have denied that they owe the statutorily required Agent Fees to Plaintiff and the Class.

63. Plaintiff and the Class seek a declaration, in accordance with SBA Regulations and pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that Defendants are obligated to set aside money to pay, and to pay the Agent Fees the PPP Agents have earned for the work performed on behalf of their clients that received a PPP loan from the Defendants.

64. Plaintiff and the Class seek a declaration in accordance with the SBA Regulations that a portion of the Lender Fees paid to Defendants must be paid to Plaintiff and the Class.

### B. COUNT II: UNJUST ENRICHMENT AGAINST ALL DEFENDANTS

65. Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

66. Plaintiff and the Class Members are PPP Agents who assisted small businesses in preparing their Application for a PPP loan from Defendants who, in turn, received a federal guarantee of repayment of the funds as well as a generous Lender Fee for each PPP loan from the U.S. Government.

67. To participate in the PPP, "Lenders **must** comply with the applicable lender obligations set forth in this [SBA PPP Final Rule]…"[12]. Despite their efforts as PPP Agents, Defendants have failed to pay Plaintiff and the Class Members the Agent Fees in violation of the SBA PPP Final Rule.

68. Instead, Defendants have retained the full amount of the Lender Fees from which the SBA Regulations require Agent Fees to be paid. Therefore, Defendants have unfairly retained fees intended to benefit and compensate Plaintiff and the Class for their efforts in promoting the interests of the CARES Act and ensuring small businesses receive PPP loans.

69. By holding themselves out as PPP lenders, Defendants' conduct requested Plaintiff and Class Members to assist Applicants with their PPP Applications and have the Applications submitted to Defendants for approval. By holding themselves out as PPP lenders, Defendants have agreed to compliance with the terms of the CARES Act and corresponding SBA regulations regarding Agent Fees.

70. Defendants have been, and continue to be unjustly enriched, to the detriment and at the expense of the Plaintiff and Class Members.

[12] 85 FR 20812 (1). (Emphasis Added).

71. Defendants have unjustly benefitted through the illegal retention of the Agent Fees portion of the Lender Fees paid by the Federal Government to the Defendants for the benefit of the Plaintiff and Class Members. Defendants are illegally keeping these funds and earning interest on the funds that belong to Plaintiff and Class Members.

72. If Defendants' practice of retaining the full amount of Lender Fees despite the efforts of PPP Agents who, under the SBA Regulations, are entitled to a portion of the Lender Fees as Agent Fees, then the purpose and intent of the CARES Act would be thwarted because PPP Agents would receive no due compensation for assisting small businesses seeking a PPP Loan.

73. Plaintiff and Class Members have no other means of obtaining compensation because the **SBA Regulations prohibit PPP Agents from receiving payment from any source other than the Lender Fees and expressly prohibit collecting any fees from the Applicants**.

74. Defendants' conduct willfully and intentionally violates the terms of the SBA Regulations by unilaterally refusing to forward to the PPP Agents the regulatorily required Agent Fees that the Federal Government entrusted to the Defendants. Defendants' actions render those terms superfluous and undermine the intent of Congress to promote small business loans under the PPP and CARES Act.

75. Defendants should not be allowed to retain the proceeds from the benefits conferred upon it by Plaintiff and the U.S. Government.

76. Plaintiff and the Class were injured as a direct and proximate cause of Defendants' misconduct. Therefore, Plaintiff seeks disgorgement of Defendants' unjustly acquired profits and other monetary benefits resulting from Defendants' unlawful conduct, an injunction preventing Defendants from continuing their unlawful conduct, and all other relief afforded under the law that this Court deems just and proper.

### C. COUNT III: CONVERSION AGAINST ALL DEFENDANTS

77. Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

78. Under the SBA Regulations, Plaintiff and the Class, as PPP Agents, have a right to, title in, and the legal right of possession of, Agent Fees that must be paid from the amount of Lender Fees provided to Defendants for lending money pursuant to approved Applications.

79. The SBA Regulations state that "Agent fees ***will*** be paid out of lender fees" and provide guidelines on the amount of Agent Fees that should be paid to the PPP Agent, depending on the size of the PPP loan secured.

80. Additionally, the SBA Regulations require that Lenders, not Borrowers, pay the Agent Fees. The SBA Regulations unequivocally state that "Agents may not collect fees from the applicant."

81. Plaintiff and Class Members fulfilled the role of PPP Agent by assisting small businesses with their Applications. As a direct result of the efforts of Plaintiff and Class Members, Defendants made federally backed PPP loans, entitling Defendants to Lender Fees from the U.S. Government. As such, Plaintiff has a right to receive, and title to, the regulatorily-mandated Agent Fees.

82. Although Plaintiff is entitled to Agent fees under the SBA Regulations, Defendants have failed to pay the required Agent Fees, which the Federal Government paid to the Defendants as part of the Lender Fees. Defendants have no legal claim, authorization, or approval for this wrongful withholding of the Agent Fees. Therefore, Defendants have appropriated, assumed, and exercised dominion over the Plaintiff's and Class Members' Agent Fees.

83. In Ohio, money may be the subject of a conversion claim if the money can be

identified, or segregated, and an obligation to treat it in a specific manner is established. That requirement is met because the Agent Fees are a segregated portion of the Lender Fees awarded through the SBA Regulations for a successfully funded PPP loan.

84. The money owed Plaintiff and Class Members can easily be identified using loan documents. The exact amount of Agent Fees can be calculated from the SBA Regulations that precisely identify the amount of Agent Fees given to the Lenders.

85. The CARES Act and regulations promulgated pursuant to the CARES Act provide an obligation for the Defendants to pass along the Agent Fees to the Plaintiff and Class Members. At the time they unlawfully retained the Agent Fees, Defendants knew or should have known that the Agent Fees were owed to Plaintiff and Class Members.

86. Defendants' improper acts or practices of refusing to pay Plaintiff and Class Members the mandated Agent Fees are the proximate cause of the damages sustained by the Plaintiff and the Class Members.

87. Defendants' conduct manifests a knowing and reckless indifference toward, and a disregard of, the rights of Plaintiff and the Class Members.

88. By withholding the Agent fees, Defendants have maintained wrongful control over Plaintiff's property inconsistent with Plaintiff's entitlements under the SBA Regulations.

89. Defendants committed civil conversion by retaining monies owed to Plaintiff and Class Members.

90. Plaintiff and Class Members have been injured as a direct and proximate cause of Defendants' misconduct. Plaintiff, as such, seeks recovery from Defendants in the amount of the owed Agent Fees, and for all other relief afforded under the law.

### D. COUNT IV: BREACH OF AN IMPLIED CONTRACT AGAINST ALL DEFENDANTS

91. Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

92. Plaintiff and Class Members, as PPP Agents, conferred a benefit upon Defendants by assisting Applicants with their PPP Applications that were submitted to Defendants. Based on the work of Plaintiff and Class Members as PPP Agents, Defendants received the Lender Fee from the Federal Government, approximately 20% of which a specific amount was to be forwarded to the PPP Agents (i.e., Plaintiff and Class Members) as payment for the Agent Fees.

93. In performing work to assist Applicants in preparing Applications for a PPP loan for their small business, Plaintiff and Class Members had a reasonable expectation of compensation. That reasonable expectation stemmed from the SBA Regulations, which explicitly stated PPP Agents would receive Agent Fees from the Lenders. Those Agent Fees were to be paid out of a portion of the Lender Fees.

94. Despite that reasonable expectation and the plain language of the SBA Regulations, Defendants have failed to pay Plaintiff and Class Members the statutorily required Agent Fees.

95. Instead, Defendants have retained, or stated their entitlement to retain, the Agent Fee portion of the Lender Fees for themselves and thereby, benefit by retaining funds meant to compensate Plaintiff and Class Members for the work they performed as Agents.

96. It would be unjust to allow Defendants to retain the benefit of Agent Fees belonging to Plaintiff and Class Members in light of the reasonable expectations of Plaintiff and Class Members that they would receive payment for the services they rendered.

97. Defendants, regardless of any intent of the parties, have a quasi-contractual

obligation to pay for the services by which they benefited from and to compensate Plaintiff and Class Members for the reasonable value of their services.

98. Plaintiff and Class Members have been injured as a direct and proximate cause of Defendants' misconduct. As such, Plaintiff and Class Members seek recovery from Defendants in the amount of the owed Agent Fees, and for all other relief afforded under the law.

### E. COUNT V: VIOLATION OF THE CARES ACT AGAINST ALL DEFENDANTS

99. Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

100. The CARES Act provides a stimulus package in response to the COVID-19 pandemic and includes the PPP, which assists small businesses seeking to maintain payroll and other authorized expenses.

101. There is an implied cause of action arising under the CARES Act. The CARES Act, along with the SBA's Regulations, provides for the payment of Agent Fess to authorized representatives who assisted PPP loan applicants with their PPP Applications (*i.e.,* PPP Agents consisting of the Plaintiff and Class Members). *See, Jenkins v. Hyundai Motor Finance Co.,* 389 F. Supp. 2d 961 (S.D. Ohio E.D. Sep. 30, 2005)(implying cause of action based on violation of statute).

102. In flagrant disregard for the law, Defendants have failed and/or refused to pay the Agent Fees to the Applicants' authorized representatives (*i.e.*, PPP Agents consisting of the Plaintiff and the Class Members), and instead, kept the fees to enrich themselves.

103. Plaintiffs and Class Members are PPP Agents under the CARES Act and the SBA Regulations and, therefore, are entitled to the Agent Fees they have earned. The Agent Fees have been paid to the Lenders by the Federal Government and are to be paid by the Lenders to the Plaintiff and Class Members as set forth in the CARES Act and the SBA Regulations.

104. Nevertheless, Defendants refused to pay Plaintiff and Class Members the authorized Agent Fees.

105. As a direct and proximate result of Defendants' failure and/or refusal to comply with the CARES Act and the Rule, Plaintiffs and the Class Members have suffered damages in excess of $5 million.

### F. COUNT VI: VIOLATIONS OF THE SBA LOAN PROGRAM AGAINST ALL DEFENDANTS

106. Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

107. The PPP was added to the SBA's 7(a) loan program, which is designed to assist small businesses in obtaining financing.

108. There is an implied cause of action arising under the SBA's 7(a) loan program, as applied through the CARES Act. *See, Jenkins v. Hyundai Motor Finance Co.,* 389 F. Supp. 2d 961 (S.D. Ohio E.D. Sep. 30, 2005)(implying cause of action based on violation of statute).

109. The SBA Regulations provide for the payment of Agent Fees to authorized representatives that assisted PPP Applicants with their PPP Applications (*i.e.*, PPP Agents consisting of the Plaintiff and the Class Members).

110. In flagrant disregard for the law, Defendants have failed and/or refused to pay Agent Fees to Plaintiffs and the Class Members, and instead, have kept the fees to enrich themselves.

111. As a direct and proximate result of Defendants' wrongful actions, Plaintiffs and the Class Members have suffered damages in excess of $5 million

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a. For an Order certifying the Class as defined above, appointing Plaintiff as Class representative, and appointing Plaintiff's counsel as Class counsel;

b. For an Order declaring Defendants' actions to be unlawful;

c. For a declaration that all regulatorily-mandated and calculated Agent Fees are owed to Plaintiff and the Class and should be deposited into a mutually agreeable fund or funds within 60 days, to be distributed to the PPP Agents who are entitled to the funds;

d. For all injunctive and other equitable relief available to Plaintiff and Class Members;

e. For an award of all recoverable compensatory, statutory, and other damages sustained by Plaintiff and Class Members;

f. For reasonable attorneys' fees and expenses as permitted by applicable statutes and law;

g. For costs related to bringing this action;

h. For pre- and post-judgment interest as allowed by law; and,

i. Such further relief at law or in equity that this Court deems just and proper.

Dated: 7/18/2020

Respectfully submitted,

*/s/ Patrick G. Warner*
Patrick G. Warner (0064604)
pwarner@leistwarner.com
Darrin C. Leist (0070533)
dleist@leistwarner.com
LEIST WARNER, LLC
513 East Rich Street, Suite 201
Columbus, Ohio 43215
Telephone: (614) 222-1000
Facsimile: (614) 222-0808

GRAYLAW GROUP, INC.
Michael E. Adler, Esq. (CA Bar 236115)*
26500 Agoura Road, #102-127
Calabasas, CA 91302
Telephone: (818) 532-2833
Facsimile: (818) 532-2834

GERAGOS & GERAGOS, PC
Mark J. Geragos (CA Bar No.: 108325)*
Ben J. Meiselas (CA Bar No.: 277412)*
644 South Figueroa Street
Los Angeles, California 90017
Telephone: (213) 625-3900
Facsimile: (213) 232-3255

DHILLON LAW GROUP INC.
Harmeet K. Dhillon (CA Bar No. 207873)*
Nitoj P. Singh (CA Bar No. 265005)*
177 Post St., Suite 700
San Francisco, CA 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

*Counsel for Plaintiff and the putative Class*

**Pro hac vice motions forthcoming*

## VIII. DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the Class, demands a trial by jury on all issues so triable.

*/s/ Patrick G. Warner*
Patrick G. Warner (0064604)

*Co-counsel for Plaintiff and the putative Class*